UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LARRY MARTIN, FRANCINE MARTIN, )<br>and DEAN MARTIN,                  )<br>                                                    )<br>              Plaintiffs,                   )<br>                                                    )<br>       v.                                        )<br>                                                    )<br>YOUNG KIM, M.D., in his individual )<br>capacity, THOMAS R. PHILPOT, M.D., )<br>in his official capacity and in his individual )<br>capacity, and DAVID PASTRICK, in his )<br>official capacity,                           )<br>                                                    )<br>              Defendants.                )  | CAUSE NO. 2:03cv536 |

**OPINION AND ORDER**

This matter is presently before the Court on Defendants' Joint Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 42]. Plaintiffs Larry, Francine, and Dean Martin brought this action to recover damages resulting from the alleged unconstitutional actions of Defendants Young Kim, M.D., Thomas Philpot, Jackie Crook, and David Pastrick, all of whom hold or did hold at the relevant times, positions with the Lake County Coroner's Office. Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants violated their Fourteenth Amendment right to procedural and substantive due process and their Fourth Amendment right to be free from unreasonable search and seizure. For the following reasons, that motion is denied.

I.  BACKGROUND

The facts alleged in the complaint, which we accept as true at this stage of the proceedings, demonstrate that on December 25, 2001, Larry and Francine Martin's son, Eric

1

Martin, was shot numerous times in the head and chest in Gary, Indiana.  When he arrived at Methodist Hospital's Northlake Campus, physicians placed him on a ventilator and determined that he had ceased to have any brain function and would be unable to live if taken off life support.  After physicians had determined through exploratory surgery that Eric's kidneys were intact and had suffered no damage, the Martins expressed their wish to hospital officials for Eric to become an organ donor.

Mr. and Mrs. Martin's nephew and Eric's cousin, Dean Martin, suffers from renal kidney failure and is kept alive through thrice weekly dialysis treatment.  Naturally, presuming there was a match, the Martins wanted to give one of Eric's kidneys to him so that at least some good could come out of their son's death.  A representative from the Regional Organ Bank of Illinois ("ROBI") came to the hospital to meet with the Martins and the hospital staff.  They found that Eric was a proper donor candidate for a kidney transplant for Dean.  On December 26, the Martins signed a ROBI Consent for Anatomical Gift to remove Eric's kidney and to donate it to Dean.  Arrangements were then made to conduct the transplant surgery for Dean Martin at the University of Chicago Hospitals.

On that day, defendant Jackie Crook, an investigator for the Lake County Coroner's office came to the hospital and was informed of the Martins' desire to have Eric's kidney donated to Dean.  She heard the opinion of the medical personnel and ROBI that the transplant was appropriate and that Eric's kidneys were undamaged.  After Crook communicated this information to Defendant Dr. Young Kim, a pathologist in the Lake County Coroner's Office, and Defendant Dr. Thomas Philpot, then the Lake County Coroner, she informed the Martins, the hospital and ROBI officials that Eric's kidney could not be harvested because removal would interfere with the coroner's autopsy as well as the investigation into Eric's shooting.  The

2

defendants then directed the Hospital to remove Eric from life support so that Dr. Kim could perform the autopsy. As a result, the transplant did not occur, and Dean Martin remains without a functioning kidney.

The Plaintiffs then brought suit against Dr. Kim (the pathologist), Thomas Philpot (the Coroner at the time), and Jackie Crook ( the Coroner's investigator) all in their individual capacities. David Pastrick, the current Lake County Coroner who replaced Philpot, is named in the complaint only in his official capacity.

## II.  DISCUSSION

Defendants bring this Motion to Dismiss pursuant to Rule 12(b)(6). They assert that Plaintiffs have failed to allege sufficient facts to support their claims of violations of procedural and substantive due process and unreasonable search and seizure under Section 1983. Although the Defendants designated their motion as one for dismissal under Rule 12(b)(6), it was not filed until all Defendants had filed an answer to the Plaintiffs' Complaint. Thus, we must consider their motion as a request for judgment on the pleadings pursuant to Rule 12(c). Nonetheless, motions for judgment on the pleadings brought under Rule 12(c) are governed by essentially the same standards as motions to dismiss pursuant to Rule 12(b)(6). *Gustafason v. Jones*, 117 F.3d 1015, 1017 (7th Cir. 1997).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Wieler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996); *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir.1995). "It is true that the Federal

3

Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a complaint is based. Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Stevens v. Umsted,* 131 F.3d 697, 700 (7th Cir. 1997) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985)). Thus, the allegations in the Plaintiffs' Complaint must outline the elements of a violation of § 1983.

To survive a motion to dismiss a § 1983 action, a plaintiff must allege facts which show (1) that the defendant intentionally and unlawfully deprived the plaintiff of a constitutional right and (2) that the deprivation occurred under the color of state law. *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000). The parties do not dispute that defendants were acting under color of state law. However, Defendants maintain that Plaintiffs have not been deprived of their substantive and procedural due process rights under the Fourteenth Amendment or of their fundamental right to be free from unreasonable searches and seizures. We will consider the sufficiency of the facts pleaded by the Plaintiffs in asserting a constitutional right for each of these claims.

**A.  Plaintiffs' Due Process Claims**

The Fourteenth Amendment prohibits state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has been held to protect individuals from deprivations by state actors both procedurally and substantively. *County of Sacramento v. Lewis,* 523 U.S. 833, 840-841 (1998). Procedural due process protects a person from a state actor failing to use adequate procedures before or after depriving them of their life, liberty or property. *Id* at 840-41. In contrast, substantive due process prohibits "certain governmental actions regardless of the fairness of the procedures used

to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986).  Plaintiffs allege that both their procedural and substantive due process rights have been violated.

**1.  Procedural Due Process**

The Due Process Clause guarantees fair procedure before or after a deprivation of a protected interest in life, liberty, or property.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  To maintain this claim, plaintiffs must show that (1) the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law. *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir.2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  The Martins argue that they have been deprived of a protected property and liberty interest.  Dean Martin argues that he has been deprived of only a protected liberty interest.  We will first consider whether the Martins had a constitutionally protected property interest in Eric's undamaged kidneys once Eric was brain dead.

In a due process claim, property interests are not created by the Constitution.  *Moore v. Muncie Police & Fire Merit Comm'n,* 312 F.3d 322, 326 (7th Cir.2002).  Instead, they are created by an independent source such as state law. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978).  Federal constitutional law determines whether the state-created property interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.  *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

While neither the Court nor either of the parties was able to find any Seventh Circuit cases examining this topic, other jurisdictions have considered the issue of what property interest a person has in a deceased relative, and some of these courts have recognized that state laws have created some form of a property interest in the deceased person's body or organs.  See

5

*Arnaud v. Odom,* 870 F.2d 304, 308-09 (5th Cir. 1989) (holding that "Louisiana has indeed established a "quasi property" right of survivors in the remains of their deceased relatives," also finding that there were adequate state post deprivation procedures); *Whaley v. County of Ruscola,* 58 F.3d 1111, 1116 (6th Cir. 1995) (holding that the next of kin have a constitutionally protected property interest in the dead body of a relative, an interest that includes the right to dispose of the body in limited circumstances, possess the body for burial, and prevent its mutilation); *Brotherton v. Cleveland,* 923 F.2d 477, 482 (6th Cir. 1991) (holding that the aggregate of rights granted by the state of Ohio to next of kin rises to the level of a "legitimate claim of entitlement" that is protected by the due process clause); *Newman v. Sathyavaglswaran,* 287 F.3d 786, 796-797 (9th Cir. 2002) (holding the exclusive right of next of kin to possess bodies of deceased family members created property interest entitled to due process protection); *Mansaw v. Midwest Organ Bank,* 1998 WL 386327, *4 (W.D. Mo. 1998) (holding that in Missouri next of kin have a property interest in the disposal of a deceased person's body); *Crocker v. Pleasant,* 778 So.2d 978, 988 (Fla . 2001) (holding that "in Florida there is a legitimate claim of entitlement by the next of kin to possession of the remains of a decedent for burial or other lawful disposition"). On the other hand, the Eighth Circuit has held that any "quasi property right" held by the next of kin does not extend to a decedent's body organs. *Fuller v. Marx*, 724 F.2d 717, 719 (8th Cir. 1984).

      The analysis in two of these cases finding some claim of entitlement, *Brotherton* and *Whaley*, is of particular relevance to our case. In *Brotherton*, a decedent's widow brought a § 1983 action over the coroner's removal of her deceased husband's corneas against her wishes. 923 F.2d at 478-79. The Sixth Circuit analyzed a number of Ohio state cases and statutes, and found that the rights granted in a dead body added up to enough of an interest to be called a

6

"legitimate claim of entitlement." *Id.* at 482. In so holding, the Sixth Circuit examined two Ohio state decisions in particular. One, *Everman v. Davis*, 561 N.E.2d 547 (Ohio Ct. App. 1989), expressed the right of possession that a decedent's widow had in the body. *Id.* Although *Everman* stopped short of calling the widow's right a "property interest," the Sixth Circuit found that *Everman* presented a situation going to "the very core of a property interest: the right to possess." *Brotherton*, 923 F.2d at 481. The other case discussed by the *Brotherton* court, *Carney v. Knollwood Cemetery Ass'n*, 514 N.E.2d 430 (Ohio Ct. App. 1986), also allowed a § 1983 claim for the disturbance of a dead body. *Id.* The *Brotherton* court thus found these cases to be significant statements that Ohio granted to the plaintiff a legitimate claim of entitlement in her husband's body. *Brotherton*, 923 F.2d at 482.

The other guidepost of Ohio law to which the *Brotherton* court looked was Ohio's enactment of the Uniform Anatomical Gift Act, Ohio Rev. Code Ann. § 2108.02(B), which expressly grants the right to control the disposal of the body to the widow. *Brotherton*, 923 F.2d at 482. The court aggregated the interests granted by these various sources and found that, in total, the rights granted by Ohio rose to the level of a "legitimate claim of entitlement." *Id.* Thus, the plaintiff's § 1983 claim could proceed.

Similarly, in *Whaley*, the Sixth Circuit found that Michigan law was in substance the same as Ohio law in this area. 58 F.3d at 1114. Expressly following the *Brotherton* court's logic, the *Whaley* court cited Michigan cases that held that the next of kin had a right to possess a body for burial and prevent its mutilation. *Id.* at 1115 (*citing Doxtator v. Chicago & W. Mich. R.R.*, 79 N.W. 922 (1899); *Keyes v. Konkel*, 78 N.W. 649 (1899); *Deeg v. City of Detroit*, 76 N.W.2d 16 (1956)). The court also found that Michigan's Anatomical Gift Act was the same as Ohio's. 58 F.3d at 1116 (comparing Ohio Revise Code § 2108.02(B) with Mich. Comp. Laws §

7

333.10102(2)).  Thus, the court found the next of kin of the deceased had a constitutionally protected property interest in the bodies of their deceased relatives and could maintain their § 1983 action for the unauthorized removal of the deceased's corneas or eyeballs.  58 F.3d at 1116.  The court summed up its holding by stating that "Michigan provides the next of kin with a constitutionally protected interest in the dead body of a relative." *Id.*  This Court finds the approach taken by the Sixth Circuit persuasive.

That being the case, we now apply the analysis in *Whaley* and *Brotherton* to Indiana law.  Indiana common law has long recognized a next of kin's right to bury a deceased person's body.  *See, e.g., Bogert v. City of Indianapolis,* 13 Ind. 134 (1859).  In 1995, Indiana codified this common law right of the next of kin to designate the manner, type and selection of the final disposition and interment of human remains, a right very similar to those discussed in *Whaley* and *Brotherton*.  Ind. Code § 25-15-9-18 (2005).  Indiana has also recognized the right of a widow to have the body of her husband remain undisturbed in its grave.  *Meek v. State*, 1805 N.E. 899 (Ind. 1933).  Finally, Indiana has adopted the Uniform Anatomical Gift Act, which allows the next of kin to "give all or any part of the decedent's body" in the absence of contrary indications from the decedent.  Ind. Code § 29-2-16-2 (2005).  These cases and statutes grant substantially the same rights to the Martins as the cases cited by the Sixth Circuit granted to their plaintiffs.  In aggregate, these rights amount to a "legitimate claim of entitlement" and meet the test for Due Process protection.

The Defendants attempt to differentiate the case at bar by pointing to the coroner's statutory duty to investigate the death whenever a person has died from violence, Ind. Code § 36-2-14-6(a)(1), and his statutory duty to release the body only when it will not interfere with the autopsy.  Michigan and Ohio had similar statutes in effect when the Sixth Circuit made its

8

rulings. For example, in Michigan at the time of *Whaley*, a next of kin's right to donate the deceased's body was "subject to the laws of this state prescribing powers and duties with respect to autopsies." Mich. Comp. Laws § 333.10108 (1995). This contingency did not affect the Sixth Circuit's views of the existence of a property right, and it does not change ours. In this case, the Plaintiff's interest may ultimately yield to the coroner's duties to effectuate his statutory obligations. But that issue is not before the Court. We need only decide at this time whether the complaint states a claim, and the Court finds that it does.

The Defendants also point out that the cases cited by the Plaintiffs did not deal with the denial of an organ transplantation request, but rather the unauthorized removal of an organ before burial. They claim that the courts, including the Sixth Circuit, based their holdings on the common law interest that the next of kin has to bury a body as a whole. But as the Plaintiffs rightly point out, this was only part of the reasoning behind the holdings. *Brotherton* and *Whaley* also relied on enactments of the Uniform Anatomical Gift Act, which granted the next of kin the right to donate the decedent's organs. *Brotherton*, 923 F.2d at 482; *Whaley*, 58 F.3d at 1116. The difference in purpose that the Martins had for the decedent's body does not materially alter the nature of the bundle of rights granted to them by Indiana law, and does not remove the body or its organs from due process protection.

Next, the Defendants urge the Court to employ the balancing test set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That test requires the Court to engage in the relatively fact-intensive weighing of the following interests: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.  It seems obvious to the Court that such a fact-intensive inquiry is ill-suited for a motion to dismiss, and other courts have found similarly.  *See, e.g., Smith v. McDonald*, 1998 WL 259536, at *5 (N.D. Ill. May 5, 1998); *Ford v. Shalala*, 1996 WL 19161, at *8-9 (E.D.N.Y. 1996).  Thus, the Defendants' Motion to dismiss the procedural due process claims of Larry and Francine Martin is denied.

We turn now to the issue of whether or not Dean Martin, the intended donee of Eric Martin's kidneys, had a protectable liberty interest in receiving them.  The parties' briefing on this subject has not put the Court in an adequate position to decide whether there is a liberty interest at stake for Dean.  The parties do not sufficiently discuss the nature of liberty interests and why Dean does or does not have such an interest in these circumstances.  Since this case is moving forward on similar claims, leaving Dean Martin in the case will not substantially enlarge the scope of the proceedings, and this issue can be revisited at a later stage.  As such, we will reserve judgment on the issue until later.  Thus, the motion to dismiss Dean Martin's due process liberty interest claim is denied.

### 2. Substantive Due Process

The Defendants have only moved to dismiss the substantive component of Plaintiffs' case based on their contention that the actions of the government officials in this case do not "shock the conscience," as set forth in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  The Court will now examine this basis for dismissal as well.[1]  Under the *Lewis* analysis, a court

---

[1] It is important to note that there has been some confusion in the Seventh Circuit over the proper analysis for a substantive due process claim.  The Supreme Court has set forth two analyses, the *Washington v. Glucksberg,* 521 U.S. 702 (1997)*,* analysis and the *Lewis* analysis, seemingly dependent on whether it is legislation or a specific act of a government official that is at issue.  *Dunn* v. Fairfield, 158 F.3d 962, 965 (7th Cir. 1995).  The Seventh Circuit has noted both types of analyses, sometimes using just one, and, at other times, noting the confusion and

considers whether the action of the government official shocks the conscience and therefore constitutes the sort of egregious executive action that the substantive component of the Due Process Clause is designed to prevent. *Lewis,* 523 U.S. at 847 n. 8. The Supreme Court emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846 (internal quotation marks omitted). The Court further explained that "conduct intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

Accepting the factual allegations of the Complaint as true and making inferences favorable to plaintiff for purposes of the motion to dismiss, the court finds that Plaintiffs' complaint implicates the "shocks the conscience" test sufficiently to survive the motion to dismiss. The complaint alleges that Eric Martin was shot in the head and was being kept alive artificially on life support. His cousin was in need of a kidney and Eric's was a perfect match. The complaint further alleges that the defendants prevented the transplant capriciously and without any governmental interest. We accept these allegations as true. The proof, of course, will be in the pudding. The motion to dismiss the substantive component of the Plaintiffs' Due Process claims is denied.

### 3. Unreasonable Search and Seizure

---

using both. *See*, *Dunn* 158 F.3d at 965 (following *Lewis*, "the criteria that govern what is fatally arbitrary in the latter cases depend upon whether legislation or a specific act of a governmental officer is at issue"); *Doe v. City of Lafayette,* 377 F.3d 757 (7th Cir. 2004) (using the *Glucksberg* analysis, "Our first duty is to provide a 'careful description' of the liberty interest that Mr. Doe seeks to have protected ... Then, we must ask whether that interest is 'fundamental,' that is, whether it is 'objectively, deeply, rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were satisfied.' "); *Khan v. Gallitano,* 180 F.3d 829, 833-837 (7th Cir. 1999) (first applying the Glucksberg analysis, then explaining that the plaintiff's claim would also fail under *Lewis*); *Galdikas v. Fagan,* 342 F.3d 684, 690 n. 3 (7th Cir. 2003), abrogated on other grounds by, *Spiegla v. Hull,* 371 F.3d 928 (7th Cir. 2004) (explaining that the "principal ambiguity is whether the 'shocks the conscience' standard replaces the fundamental rights analysis set forth in *Glucksberg* whenever executive conduct is challenged or whether the 'shocks the conscience' standard supplements or informs the *Glucksberg* paradigm in such situations").

Larry and Francine Martin also assert that by not allowing the organ transplant to be performed, the defendants violated their Fourth Amendment rights. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." U.S. Const. amend. IV. The purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Doe v. Heck,* 327 F.3d 492 (7th Cir. 2003) (quoting *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 528 (1967)). "A 'seizure' of property occurs where there is some meaningful interference with an individual's possessory interests in [the] property." *Soldal v. Cook County, Illinois*, 506 U.S. 56, 63 (1992). The Martins are not asserting Eric Martin's Fourth Amendment rights, rather, they assert that after his death, Eric's body became their property or "effect" and that by performing the autopsy, the defendants unreasonably seized Eric's body, including his kidneys.

As discussed above in the Due Process context, Larry and Francine Martin have some sort of possessory or property interest in Eric's body for constitutional purposes. The Defendants have not given the Court any reasons other than those discussed above for not finding that that interest does not extend to the Fourth Amendment analysis. And it seems beyond question that a coroner's refusal to allow the transplantation of an organ during its useful life is a "meaningful interference" with that interest.

The Defendants do argue that the word "effects," which is what the Martins are claiming Eric's organs to be for Fourth Amendment purposes, has been limited to those items considered to be personal property. While the case they cite, *Oliver v. U.S.*, 466 U.S. 170 (1984), does limit the term "effects" to personal property, the Court was pointing out that the term is limited to personal property and does not include real property. *Id.* at 177. Other than that limitation, the

12

*Oliver* Court did not speak to the broad issue of what constitutes an effect for Fourth Amendment purposes. The parties have not pointed to a case that would prevent the Martins' interest from receiving Fourth Amendment protection, and the Court's research could not find such a case either. For these reasons, the Defendants' Motion to Dismiss is denied with respect to this claim.

The Defendants also argue that the Martins' Fourth Amendment claim should be dismissed because the coroner acted reasonably in investigating Eric Martin's death. A determination of what was reasonable is difficult to make at this stage of the litigation. The Defendants' argument teeters on the edge of asking the Court to declare that as a matter of law, any decision by the coroner to perform an autopsy on a homicide victim is per se reasonable. However, one of the sections of the Indiana Code to which the Defendants cite states that recovery of organs is permissible only if "removal will not interfere with any autopsy or investigation." Ind. Code § 29-2-16-14.5(a)(5). The Plaintiffs argue that removal of Eric Martin's kidneys would not have interfered with the autopsy. Resolution of this dispute, and similar disputes regarding the reasonableness of the coroner's behavior, would be inappropriate at this stage of the case.

    *4. Qualified Immunity*

Finally, the Defendants move to dismiss the case against the individual defendants on the basis of qualified immunity. Under qualified immunity, government officials enjoy immunity from damages liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Zorzi v. County of Putnam*, 30 F.3d 885, 891 (7th Cir. 1994). The Supreme Court has addressed the meaning of "clearly established" as follows:

13

>[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted).  A court "must ask as a practical matter whether a reasonable official would have understood that what she was doing was unlawful." *Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir.1997).

Ordinarily, immunity is an affirmative defense.  *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980).  We say "ordinarily" because there are occasions where courts have granted motions to dismiss on the grounds of qualified immunity even though it is an affirmative defense.  *See e.g. Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000).  But a defendant is not entitled to have the court consider the defense at this stage of the proceedings if facts outside the complaint are needed in order to do so.  *Id*. at 774-75 (Easterbrook concurring).  The Court believes that the more appropriate route is to decide the immunity issue after some discovery has taken place. *Id*. at 775.  Inasmuch as either party may request summary judgment "at any time," Fed.R.Civ.P. 56(b), the parties are therefore encouraged to raise the issue of immunity again at the appropriate time consistent with Rule 56 and the Local Rules.  For now, the motion to dismiss on the grounds of qualified immunity is denied.

## III.  CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss [Docket No. 42] is **DENIED**.

**SO ORDERED.**

ENTERED: September 19, 2005

s/ Philip Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
